No. 100,396

STATE OF KANSAS, *Appellee*, v. KERRY D. JENKINS, *Appellant*.

(284 P.3d 1037)

Opinion filed September 7, 2012.

*Rick Kittel*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: After Kerry Jenkins was convicted of misdemeanor theft in municipal court for violating a Wichita city ordinance, his conviction was vacated and he was charged with and convicted of felony theft in state district court for the same offense. Jenkins argues double jeopardy attached to the municipal court proceeding, so the State's felony theft prosecution is barred under the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights, as codified at K.S.A. 21-3108. The State counters that jeopardy did not attach to the municipal court proceeding because the municipal court did not have jurisdiction over felony theft. We hold that the municipal court could vacate Jenkins' plea, and the State could prosecute him for felony theft. Double jeopardy did not attach. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On May 1, 2007, Jenkins stole two DVDs, valued at less than $1,000, from a grocery store. Jenkins was charged in municipal court with misdemeanor theft. Wichita City Ordinance 5.42.010 (2005), petit theft, classifies theft of property valued at under $1,000 as a misdemeanor and provides for a potential penalty of 1 year in jail and a fine.

At the time of the crime, K.S.A. 2006 Supp. 21-3701(b)(5) also classified theft of property valued at less than $1,000 as a misdemeanor, but another subsection of the statute provided: "Theft of property of the value of less than $1,000 is a severity level 9, non-person felony *if committed by a person who has been convicted of theft two or more times.*" (Emphasis added.) K.S.A. 2006 Supp. 21-3701(b)(6); see K.S.A. 21-3701(b)(5), (6) (same). Jenkins had two prior theft convictions.

On May 31, 2007, the district attorney's office filed felony theft charges in district court against Jenkins for the same theft. But on June 5, 2007—just 5 days after the felony charges were filed— Jenkins pleaded no contest to misdemeanor theft in municipal court.

On June 21, 2007, the city prosecutor moved to vacate the misdemeanor theft conviction. The City argued the municipal court

lacked jurisdiction to prosecute the misdemeanor theft charge because Jenkins' crime should have been classified as a felony under K.S.A. 21-3701(b)(6). The city prosecutor cited *State v. Elliott*, 281 Kan. 583, Syl. ¶ 1, 133 P.3d 1253 (2006), for the holding that the municipal court lacks jurisdiction over felony crimes. On July 3, 2007, the municipal court granted the City's motion to vacate.

On July 18, 2007, Jenkins filed a motion to dismiss the felony theft charge in district court, arguing it was a second prosecution for the same crime in violation of the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to the United States Constitution, §10 of the Kansas Constitution Bill of Rights, and K.S.A. 21-3108. The State argued the statutory and constitutional double jeopardy provisions were not violated because the municipal court lacked jurisdiction. The district court agreed with the State.

The district court held that under K.S.A. 21-3701(b)(6), Jenkins' third theft conviction must be classified as a felony. It held the municipal court conviction was a nullity because the municipal court lacked jurisdiction over felonies and that double jeopardy protections did not bar the felony proceedings in district court. The district court then presided over a bench trial during which Jenkins was convicted for felony theft. Jenkins filed a timely appeal to the Court of Appeals, arguing the municipal court had jurisdiction over the misdemeanor theft prosecution, so the second prosecution violated double jeopardy.

The Court of Appeals held that *Elliott* was controlling and the municipal court lacked jurisdiction because the theft was classified as a felony under K.S.A. 21-3701(b)(6). *State v. Jenkins*, No. 100,396, 2009 WL 2144059, at *1-2 (Kan. App. 2009) (unpublished opinion). It then held K.S.A. 21-3108(4)(a), the statutory protection against double jeopardy, does not bar a second prosecution when the court presiding over the first prosecution lacked jurisdiction. 2009 WL 2144059, at *2. Jenkins filed a petition for review with this court, raising the same double jeopardy issue. This court has jurisdiction under K.S.A. 20-3018(b) (review of Court of Appeals decision).

## ANALYSIS

The Double Jeopardy Clause of the Fifth Amendment to the

United States Constitution protects against a second prosecution after conviction for the same offense by the same sovereign. See *Heath v. Alabama*, 474 U.S. 82, 88-89, 106 S. Ct. 433, 88 L. Ed. 2d 387 (1985) (under the dual sovereignty doctrine a defendant may be prosecuted for the same crime by two sovereigns if the two entities draw their authority to punish the offender from distinct sources of power). This court has held that § 10 of the Kansas Constitution Bill of Rights and the Fifth Amendment to the United States Constitution are coextensive. *State v. Morton*, 283 Kan. 464, 467, 153 P.3d 532 (2007); see *State v. Cady*, 254 Kan. 393, 396-97, 867 P.2d 270 (1994).

Historically, Kansas treated the cities and the State as separate sovereigns, allowing prosecution of the same crime in both municipal and district court. *Earwood v. State*, 198 Kan. 659, 660, 426 P.2d 151 (1967) ("The city and the state are separate sovereigns having separate codes of behavior. We have previously declared that a defendant may be prosecuted for his actions by both sovereigns."). But the United States Supreme Court held that practice violated the Fifth and Fourteenth Amendments. *Waller v. Florida*, 397 U.S. 387, 393-95, 90 S. Ct. 1184, 25 L. Ed. 2d 435, *reh. denied* 398 U.S. 914 (1970) ("[T]he judicial power to try petitioner on the first charges in municipal court springs from the same organic law that created the state court . . . in which petitioner was tried and convicted for a felony," and petitioner could not be tried by both the municipal government and the State.). This court recognized that *Waller* overruled *Earwood* in *Cox v. State*, 208 Kan. 190, 191-92, 490 P.2d 381 (1971) (*Earwood* and other similar cases "may no longer be considered sound authority insofar as they are grounded on the theory of dual sovereignty of city and state.").

Under this precedent, Jenkins' prosecution is seen as arising from the same sovereign because both the City and the State derive their power from the same organic law, the Kansas Constitution, so the double jeopardy provisions are potentially implicated. Whether a criminal defendant's protection against double jeopardy is violated is a question of law over which an appellate court has unlimited review. *State v. Gaudina*, 284 Kan. 354, 369, 160 P.3d 854 (2007); *Morton*, 283 Kan. at 468.

The parties agree double jeopardy does not attach to a proceeding if the court lacked jurisdiction. This point is well established. See, *e.g.*, *Serfass v. United States*, 420 U.S. 377, 391-92, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975) ("[Jeopardy] does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' [Citations omitted.] . . . Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy."); *Grafton v. United States*, 206 U.S. 333, 345, 27 S. Ct. 749, 51 L. Ed. 1084 (1907) ("[B]efore a person can be said to have been put in jeopardy of life or limb the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged."); K.S.A. 21-3108(4)(a) (prosecution is not barred "[b]y a former prosecution before a court which lacked jurisdiction over the defendant or the offense"); *State v. Hendren*, 127 Kan. 497, 499-500, 274 P. 274 (1929) (Double jeopardy did not attach to prosecution in Cherokee County for blackmail because it was charged in wrong county and " 'defendant cannot be considered as put in jeopardy by a proceeding in a court that has no jurisdiction in the premises, because any judgment that might be rendered against him would be void.' ").

The parties dispute whether the municipal court had subject matter jurisdiction over Jenkins' third theft prosecution. Jenkins argues the municipal court had concurrent jurisdiction to convict him of misdemeanor theft under the Wichita ordinance, even though the crime would have been classified as a felony under K.S.A. 21-3701, because a prosecutor has discretion over whether to offer proof of prior offenses. The State argues municipal courts do not have jurisdiction over felonies and K.S.A. 21-3701(b)(6) mandates that the third prosecution for a theft of property valued at less than $1,000 is a felony.

To determine whether double jeopardy attached to Jenkins' municipal court proceedings, we must resolve whether the municipal court had subject matter jurisdiction. Whether the municipal court had jurisdiction over the misdemeanor theft prosecution is a question of law subject to unlimited review. *State v. McDaniel*, 292 Kan. 443, 444, 254 P.3d 534 (2011).

*Scope of Municipal Court Jurisdiction*

The jurisdiction of municipal and state district courts is defined by statute. *City of Junction City v. Cadoret*, 263 Kan. 164, 168, 946 P.2d 1356 (1997). K.S.A. 12-4104 defines municipal court jurisdiction, and K.S.A. 22-2601 defines state district court jurisdiction in criminal cases.

At the time the municipal charges were filed against Jenkins and he was found guilty in municipal court, K.S.A. 12-4104 stated: "The municipal court of each city shall have jurisdiction to hear and determine cases involving violations of the ordinances of the city." And K.S.A. 22-2601 (Furse 1995) stated: "The district court shall have exclusive jurisdiction to try all cases of felony and other criminal cases under the laws of the state of Kansas.". In *Cadoret*, this court held that "[a] reading of these statutes clearly shows that crimes which are designated as felonies *can only be charged and tried in district courts, not in municipal courts*." (Emphasis added.) 263 Kan. at 168.

But Jenkins argues the city prosecutor can exercise discretion by choosing not to prove at least one of Jenkins prior theft convictions, avoiding the state statute's felony designation. The State counters that Jenkins' third theft prosecution must be classified as a felony under state law, which would mean the city ordinance must be deemed invalid because it treats a third theft conviction as a misdemeanor.

This court has held that prosecutors have discretion to decide the level of offense to charge. See *State v. Portillo*, 294 Kan. 242, 253, 274 P.3d 640 (2012) ("prosecutor has essentially unfettered discretion to ignore a fact that would support a prosecution for a more serious offense and, instead, can merely choose to prosecute the defendant for a lesser offense"); *State v. Sandberg*, 290 Kan. 980, 986, 235 P.3d 476 (2010) (nothing " ' "foreclose[s] the prosecutor from deciding in a particular case that, notwithstanding the presence of one of the aggravated facts, the defendant will still be prosecuted for the lesser offense" ' "). But a prosecutor cannot simply confer subject matter jurisdiction on a court. *Miller v. Glacier Development Co.*, 293 Kan. 665, 669, 270 P.3d 1065 (2011)

("[S]ubject matter jurisdiction is vested by statute, and parties cannot confer such jurisdiction upon a court by consent, waiver, or estoppel.").

Resolution of this case turns on whether the city prosecutor could prosecute Jenkins based on a municipal ordinance that degrades the felony designation established by state law for Jenkins' third theft crime. In other words, can the City enact an ordinance classifying a crime as a misdemeanor even though the state law specifically designates it as a felony? If the City had authority under its home rule powers to enact an ordinance classifying all thefts of property valued at less than $1,000 as misdemeanors, the municipal court could exercise jurisdiction based on the Wichita petit theft ordinance. If not, the ordinance was invalid, and the municipal court could not base its jurisdiction upon it.

The legislature may preempt the constitutional authority of cities only in the manner prescribed by the Home Rule Amendment to the Kansas Constitution, Article 12, § 5. *State ex rel. Kline v. Board of Comm'rs of Unified Gov't of Wyandotte Co./KC*, 277 Kan. 516, Syl. ¶ 2, 85 P.3d 1237 (2004). While the Home Rule Amendment empowered cities to determine local affairs, the " 'home rule power does not authorize cities to act where the state legislature has precluded municipal action by clearly preempting the field with a uniformly applicable enactment.' " 277 Kan. at 520 (quoting *Kansas City Renaissance Festival Corp. v. City of Bonner Springs*, 269 Kan. 670, 673, 8 P.3d 701 [2000]). As long as the legislature has not preempted a subject area with a uniformly applicable enactment, cities may exercise their home rule power by: (1) enacting a charter ordinance to exempt the city from a nonuniform legislative enactment or (2) enacting an "ordinary" or noncharter ordinance if there is no conflicting legislative enactment. Kan. Const. art. 12, § 5(c); *Kline*, 277 Kan. at 520. This court has previously examined the validity of similarly conflicting state and municipal laws, and a review of those decisions provides guidance.

In *City of Junction City v. Lee*, 216 Kan. 495, 532 P.2d (1975), the defendant was convicted in municipal court of violating a Junction City ordinance that prohibited carrying a dangerous knife or firearm on one's person. Lee appealed to the district court and

sought dismissal on the grounds that the municipal ordinance conflicted with the state statute that preempted the field of weapons control. To support his argument, Lee pointed out that the statute only prohibited having the knife or weapon in two circumstances: when the weapon was concealed or when the person carrying the knife or firearm intended to use the weapon. The district court agreed the ordinance conflicted with these statutory provisions. This court reversed on appeal because we held that the ordinance merely went further than the statutory prohibition—but did not counter it. This court also held that the State had not clearly preempted the field of weapons control so as to exclude regulation by cities. 216 Kan. at 501-02. In dicta, the *Lee* court further noted that a different portion of the ordinance declared certain conduct to be a misdemeanor and that provision "could well be found to conflict with the state law because K.S.A. 21-4201(4) declares such offense to be a felony." 216 Kan. at 504.

In *Cadoret*, the defendant was convicted in municipal court with driving under the influence (DUI) as a third time offender. He appealed to district court and then sought dismissal of the conviction, arguing the city ordinance conflicted with the state statute and, as a result, the ordinance was preempted. The district court agreed and dismissed the conviction. This court affirmed. 263 Kan. at 168-74. At that time, K.S.A. 1996 Supp. 8-1567 provided that a first time DUI offense was a class B misdemeanor, a second offense was a class A misdemeanor, and a third or subsequent offense was a felony. In addition, subsection (m) of 8-1567 provided in part:

"Nothing contained in this section shall be construed as preventing any city from enacting ordinances, or any county from adopting resolutions, declaring acts prohibited or made unlawful by this act as unlawful or prohibited in such city or county and prescribing penalties for violation thereof, *but the minimum penalty prescribed by any such ordinance or resolution shall not be less than the minimum penalty prescribed by this act for the same violation,* and the maximum penalty in any such ordinance or resolution shall not exceed the maximum penalty prescribed for the same violation." (Emphasis added.)

The city adopted a DUI ordinance that was similar to, but not identical to, the state statute. Most significantly, the ordinance omitted the language designating first or second offenses as mis-

demeanors and third and subsequent offenses as felonies. In the appeal from the district court's dismissal of the municipal court conviction, the *Cadoret* court framed the issue by stating:

"The question then becomes whether a city, under the authority of 8-1567(m), may omit the severity classification of a crime designated as a felony in a state statute of uniform application in order to prosecute and punish such offenders in municipal courts. For the various reasons we will hereafter set forth, we hold a city may not do so." 263 Kan. at 168.

The court then noted the resolution did not depend on home rule authority because 8-1567(m) authorized the city to adopt a DUI resolution. Nevertheless, citing cases dealing with home rule authority, the court held the city ordinance could not conflict with the state statute. 263 Kan. at 169-74. The test for this determination, the *Cadoret* court stated, is:

"[W]hether the ordinance permits what the statute forbids or prohibits what the statute authorizes. *Lee*, 216 Kan. at 501; see *Blevins v. Hiebert*, 247 Kan. 1, 7, 795 P.2d 325 (1990). If so, there is a conflict; but if both are prohibitory and the ordinance merely goes further in its prohibition, though not counter to the prohibition in the statute, there is no conflict. *Lee*, 216 Kan. at 501.

"In the present case, 8-1567(f) expressly designates a third or a subsequent offense as a nonperson felony. [The Junction City Ordinance] fails to make this designation. The ordinance does not go further in its prohibition. *It actually permits an identical violation to be prosecuted as a nondesignated offense while the same conduct is specifically stated to be a felony if charged under the state statute. This is a clear conflict.*" (Emphasis added.) 263 Kan. at 170.

The *Cadoret* court noted this conclusion was supported by the dicta in *Lee* that the ordinance could conflict with state law because it classified the crime differently. This reference to *Lee* is significant for our purposes because *Lee* did not involve the DUI statute, which Jenkins attempts to distinguish from the theft statutes at issue in his case. But his point is weakened by the central holding in *Lee* that a municipal ordinance, even one that is in an area where the Kansas Legislature has not preempted city regulation, cannot conflict with state statute. See *Lee*, 216 Kan. at 501.

This existence of a conflict between a state statute's felony classification and a city's prosecution of a misdemeanor rose again in the DUI context in *Elliott*, 281 Kan. 583. In that case, the defendant was charged in district court with DUI as a third or subsequent

offense, meaning he already had at least two prior DUI convictions. After a presentence report showed Elliott had four prior misdemeanor convictions in municipal court and one prior felony conviction in district court, Elliott challenged his criminal history classification for sentencing purposes. In making that argument, Elliott focused on K.S.A. 22-2601 (Furse 1995), which vested district courts with exclusive jurisdiction over felonies, and asserted the third and fourth convictions in municipal court could not be used to enhance his criminal history score because the municipal court lacked subject matter jurisdiction for those crimes the Kansas Legislature classified as a felony. This court agreed, stating that "the holding and reasoning of *Cadoret* could be applied to the circumstances of the present case to conclude that, *because the municipal court possessed jurisdiction to prosecute Elliott for only two DUI offenses, the third and fourth convictions were void* and could not be used to enhance his current sentence." (Emphasis added.) *Elliott*, 281 Kan. at 587.

But the court continued its analysis to address arguments made by the State asserting the validity of the third and fourth municipal court convictions. And one of those arguments was essentially the same argument made by Jenkins in this case: The cases were not charged or proved as a felony but as a misdemeanor and, therefore, the municipal court had jurisdiction.

To support its argument, the State cited *State v. Masterson*, 261 Kan. 158, 929 P.2d 127 (1996), for its holding that a DUI is a felony only if the prior DUI convictions are alleged in the complaint and proven. In Elliott's case, the State argued, there was no way to have alleged and proved the prior convictions because three convictions occurred on the same day. Nevertheless, the *Elliott* court rejected the State's argument and held the municipal court lacked jurisdiction over the third and fourth offenses. 281 Kan. at 590-93. In doing so, the *Elliot* court discussed two post-*Matterson* decisions—*State v. Larson*, 265 Kan. 160, 958 P.2d 1154 (1998), and *State v. Seems*, 277 Kan. 303, 84 P.3d 606 (2004). In *Larson*, this court held that the State's failure to plead the severity level in the DUI complaint did not render Larson's conviction void, but instead restricted his sentence to that appropriate for a first-time offense.

265 Kan. at 164. In *Seems*, we held that the State must prove the prior convictions at the preliminary hearing in order to establish that a felony had been committed and there was probable cause to believe the felony had been committed by the defendant. 277 Kan. at 306.

The *Elliott* court rejected the contention that this meant the municipal court had handled misdemeanors and therefore had jurisdiction.

"[T]he State's position is that none of the four municipal court DUI convictions could have been felony convictions because the State neither alleged nor proved the prior DUI convictions, as required by *Larson* and *State v. Seems*, 277 Kan. 303, 84 P.3d 606 (2004). But the State fails to note that the 'remedy' for the State's failing to establish at Seems' preliminary hearing that a felony had been committed and there was probable cause to believe that the felony had been committed by the defendant was dismissal of the charges pursuant to K.S.A. 2005 Supp. 22-2902(3). Dismissal of the charges is not the same as prosecuting the charges in municipal court contrary to 8-1567(f) or (g). *With prosecution of the charges in municipal court, the question of the lack of subject matter jurisdiction remains.*" (Emphasis added.) *Elliott*, 281 Kan. at 591-92.

*Cadoret, Lee,* and *Elliott* are consistent in their position that it does not matter whether the municipal court conviction was charged and proven as a misdemeanor because the municipal ordinance on which that prosecution was based conflicted with a state statute, so there was no basis for the municipal court to exercise jurisdiction. This analysis effectively answers any attempt to distinguish *Cadoret* on the basis that the defendant had been charged with a third DUI offense.

Nevertheless, there remains a potential distinction between *Cadoret* and *Elliott* because they are DUI cases, and this case and *Lee,* which are not. This distinction arises because the DUI statute expressly prohibited cities from imposing penalties that were more harsh or lenient than the state statutory penalties. See K.S.A. 2006 Supp. 8-1567(o)(1). There is no similar provision in the theft statute at issue in Jenkins' case or in the firearms statute at issue in *Lee.*

As we have noted, this difference did not matter in the *Lee* court's analysis, but that was dicta. Nevertheless, the *Lee* court was applying a rule that has subsequently been reiterated: Cities can

adopt an ordinance or resolution relating to a local police power, even though there is a state law on the subject uniformly applicable to all municipalities, as long as the ordinance or resolution does not conflict with the state statute. *Blevins v. Heibert*, 247 Kan. 1, 8, 795 P.2d 325 (1990) ("[A] municipality has the right to legislate by ordinary ordinance or resolution non-conflicting local police powers even though there are state laws on the subject uniformly applicable to all municipalities.").

The Wichita petit theft ordinance was inconsistent with K.S.A. 21-3701 at the time Jenkins was prosecuted and convicted in that *all* thefts of property valued at under $1,000—regardless of the number of prior theft convictions of the offender—were punished as a misdemeanor. This runs directly counter to the legislature's statutory pronouncement that a third theft offense "is" a felony. To the extent the ordinance is in conflict with K.S.A. 21-3701(b)(6) in that manner, it cannot serve as a basis for the Wichita municipal court's exercise of jurisdiction. Consequently, it does not matter that a prosecutor has discretion to decide the level of offense to charge.

As held in *Cadoret* and *Elliott*, a city ordinance that conflicts with a state statute by classifying the offense as a misdemeanor when the legislature has classified the crime as a felony does not vest the municipal court with jurisdiction. The Wichita city ordinance created that conflict by allowing all thefts of property valued at less than $1,000 to be prosecuted as misdemeanors even though the same crime would be classified as a felony under K.S.A. 21-3701(b)(6) when committed by a person previously convicted of two or more thefts.

Finally, Jenkins argues the municipal court lacked authority to *sua sponte* set aside a properly entered and accepted plea absent fraud, citing *State v. Dillion*, 242 Kan. 410, Syl. ¶ 2, 748 P.2d 856 (1988). But *Dillion* is not applicable because the municipal court did not vacate the conviction *sua sponte*. The State filed a motion, and the municipal court acted on that motion. Furthermore, a conviction entered by a court that lacks jurisdiction is void. *Elliott*, 281 Kan. at 585. The municipal court could vacate Jenkins' plea, and the State could prosecute him for felony theft.

Affirmed.

MORITZ, J., not participating.
JAMES FRANKLIN DAVIS, District Judge, assigned.

* * *

JOHNSON, J., dissenting: I respectfully dissent. I disagree with the majority opinion because I believe it to be logically unsound, completely impractical, and constitutionally offensive.

With apologies to Aristotle, I begin with a loose syllogism. K.S.A. 12-4104 provides: "The municipal court of each city shall have jurisdiction to hear and determine cases involving violations of the ordinances of the city." Wichita is a Kansas municipality that has an ordinance (designated Wichita City Ordinance 5.42.010 [2005], petit theft) which prohibits the theft of property valued at under $1,000. Therefore, the municipal court in Wichita has jurisdiction to hear and determine cases involving the theft of property valued at under $1,000.

A straightforward application of the jurisdictional statute would suggest that a municipal complaint drawn in the language of the ordinance, without more, would confer subject matter jurisdiction upon the municipal court to hear and determine the case. *Cf. State v. Minor*, 197 Kan. 296, 299, 416 P.2d 724 (1966) (In district court, the charging document "is the jurisdictional instrument upon which the accused stands trial."). Just because another prosecutor, *i.e.*, a district or county attorney, may subsequently develop *additional facts* which could have supported the filing of a felony complaint in *district court* for a violation of a *state statute* does not mean that the municipal court *retroactively* lost subject matter jurisdiction over its own ordinance when that jurisdiction was properly implicated by the facts actually alleged in the city complaint.

No one has challenged the validity of the jurisdictional statute, K.S.A. 12-4104. For that matter, no one raised or briefed any issue as to the validity of the Wichita theft ordinance 5.42.010. Yet, the

majority relies upon its analysis of the unraised issue of the ordinance's validity for its holding that the ordinance improperly conflicts with K.S.A. 21-3701(b)(6) and, therefore, "cannot serve as a basis for the Wichita municipal court's exercise of jurisdiction." *Jenkins*, slip op. at 14. Simply put, this is not ordinarily how this court does business. See, *e.g.*, *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011) (issue not briefed is deemed waived and abandoned).

Moving nevertheless to the merits of the majority's holding, the opinion relies on the principle that a municipal court lacks jurisdiction to hear and determine a felony. I wholeheartedly agree. But here, Jenkins was not prosecuted for a felony in municipal court. The ordinance did not purport to be applicable to a felony; the municipal court complaint did not allege that Jenkins committed a felony or allege facts which could have enhanced the charge to a felony; the municipal judge did not find Jenkins guilty of committing a felony; and Jenkins was given a misdemeanor sentence, *i.e.*, jail time rather than prison.

Considering the specifics, the ordinance simply cannot be construed as purporting to apply to a felony. To the contrary, the title of the ordinance labels the crime as "petit theft," another way of saying "petty theft," which is defined as "[a] theft of a small quantity of cash or of low-value goods or services . . . [usually] a misdemeanor." Black's Law Dictionary 1615 (9th ed. 2009). Moreover, the ordinance does not state that it applies to a third theft conviction, *i.e.*, the ordinance does not pretend to apply to a factual scenario that would usurp or intrude upon the State's jurisdiction to prosecute felonies. Instead, the ordinance defines petit theft in the City of Wichita by using nearly identical language as that employed by the state legislature to define misdemeanor theft in K.S.A. 21-3701(a)(1) and (5). In other words, the ordinance itself is facially *consistent* with the state statute. It certainly contains no language that would indicate any attempt by the Wichita governing body to "degrade[] the felony designation established by state law," as the majority asserts. See *Jenkins*, slip op. at 8; K.S.A. 21-3701(b)(6).

Next, the municipal charging document, *i.e.*, the jurisdictional instrument, did not charge Jenkins with being a third-time of-

fender. Rather, he was simply prosecuted for violating the city ordinance that made it an offense to steal property that had a value less than $1,000. In other words, he was prosecuted for having committed acts that our legislature has defined as being misdemeanor theft. Accordingly, when the municipal judge found Jenkins guilty, after his nolo contendere plea, that ruling did *not* encompass a factual finding that Jenkins had two prior convictions for theft.

In direct contrast, the majority's flagship case of *City of Junction City v. Cadoret*, 263 Kan. 164, 165, 946 P.2d 1356 (1997), involved a defendant who "was charged and convicted in municipal court of being a third time . . . offender." That factual distinction is critical. The most obvious and practical difference is that, with the additional facts that potentially enhanced the crime to a felony being contained in the complaint, the municipal judge in *Cadoret* had the information available up front to determine whether it lacked jurisdiction. Here, there was nothing that would have alerted anyone that the theft charge might be amenable to being prosecuted as a felony in state district court until after Jenkins was convicted of petit theft, fined, sentenced to 36 days in jail, and given credit for time served. Only then was his municipal conviction set aside.

Further, in *Cadoret,* the determination of the existence of the enhancement fact was made in municipal court, contemporaneously with and as a prerequisite to, the municipal court conviction. Here, in contrast, the enhancement fact of two prior theft convictions was, at most, a mere allegation, until the district court was required to find that the prior convictions existed, as a necessary element to convict Jenkins of felony theft. In other words, the fact that allegedly deprived the municipal court of jurisdiction in this case was not *legally* determined, *i.e.*, found beyond a reasonable doubt to exist, until after the municipal court had already fully exercised its jurisdiction by convicting and sentencing Jenkins for the ordinance violation. One can only imagine the mischief that will be caused if we permit the retroactive cancellation of jurisdiction based upon postconviction factual allegations where the juris-

diction had already been exercised to arrive at a factual and legal conclusion.

Fundamental to the majority's rationale is the premise that "under K.S.A. 21-3701(b)(6), Jenkins' third theft conviction *must* be classified as a felony," *Jenkins*, slip op. at 4, because the legislature has pronounced "that a third theft offense '*is*' a felony." (Emphasis added.) *Jenkins*, slip op. at 14. These declarations are fundamentally flawed. Just because an allegation of an enhancing fact *could* make the case fit within a statutory definition of a felony, that does not automatically demand a felony prosecution. This is particularly so when the prosecutor has not alleged or offered proof of a necessary enhancing fact. The legislature defines felonies; it does not identify felons. The facts that elevate a misdemeanor to a felony are elements of the felony offense and must be proved beyond a reasonable doubt; they are not self-actualizing. Accordingly, a court cannot predetermine that a defendant's acts *must* be a particular felony based on mere allegations and a reading of the statutory definition of the crime.

To illustrate, if a defendant is being prosecuted for simple misdemeanor battery based upon hitting someone during a bar fight, the crime is not automatically elevated to felony aggravated battery just because someone might suggest that the victim's black eye is a disfigurement within the meaning of the aggravated battery statute. The existence of such disfigurement is a jury question. See *State v. Green*, 280 Kan. 758, Syl. ¶ 4, 127 P.3d 241 (2006) (facts of each case are evaluated to determine whether a bar fight results in great bodily harm; that factual determination is within the province of the jury).

Cases in which we have reversed a felony conviction based on the district court's refusal to instruct on a lesser included misdemeanor are also instructive. In our recent case, *State v. Simmons*, 295 Kan. 171, 283 P.3d 212 (2012), for example, the State alleged that the defendant committed a severity level 4 aggravated battery by causing great bodily harm to the victim when he hit her in the nose and forehead, causing injuries that required stitches to the head and surgery to correct complications from a broken nose. The jury convicted Simmons of the lesser included crime of severity

level 7 aggravated battery for causing bodily harm to the victim in a manner whereby great bodily harm or disfigurement could have been inflicted. Notwithstanding the prosecutor's allegations at trial, notwithstanding the existence of facts that arguably could have supported a conviction of either severity level 4 or severity level 7 aggravated battery, and notwithstanding that the jury's verdict must have required it to find beyond a reasonable doubt that the evidence demonstrated the existence of a felony, we reversed because the trial judge had refused to instruct on misdemeanor simple battery. In other words, we did not declare that because of allegations of great bodily harm, the crime "must be" a felony. Indeed, even the jury's finding that the defendant's acts fit the definition of aggravated battery was insufficient to make it so as a matter of law. Likewise, the *Simmons* holding would certainly refute any suggestion from the majority opinion here that the misdemeanor battery statute runs directly counter to the legislature's statutory pronouncement that alleged great bodily harm "is" a felony.

Also, I view the majority's determination of jurisdiction based on postconviction factual allegations to be inconsistent with our recent decisions relating to a defendant's age in Jessica's Law cases, pursuant to K.S.A. 21-4643. In those cases, we have held that the district court does not have jurisdiction to impose the enhanced sentence of a hard 25 life sentence if the State did not allege and prove that the defendant was age 18 years or older at the time of the offense, because " '[a] judge may not impose a more severe sentence than the maximum sentence authorized by the facts found by the jury.' " See, *e.g.*, *State v. Bello*, 289 Kan. 191, 199, 211 P.3d 139 (2009) (quoting *State v. Gould*, 271 Kan. 394, Syl. ¶ 4, 23 P.3d 801 [2001]). If we do not allow after-the-fact allegations to support an affirmance of the exercise of jurisdiction, it makes scant sense to permit retroactive withdrawal of jurisdiction on the same basis.

Granted, at first blush, one might be inclined to declare that this case is different because the sentence enhancing facts deal with prior convictions. See *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (excluding prior convictions

from the sentence enhancing facts that must be proved to a jury beyond a reasonable doubt). But I do not read the majority opinion as making or relying upon that distinction. Even if it did, the prior convictions *are* elements of the enhanced, felony version of theft of property valued under $1,000. *Cf. State v. Kemble*, 291 Kan. 109, Syl. ¶ 8, 238 P.3d 251 (2010) ("Where a crime is defined as having two different severity levels, with the higher degree of the crime being applicable if the defendant was of a certain age at the time the criminal act was committed, then the defendant's age is an element of the higher degree of the crime."). Here, the two prior convictions are what make the higher degree of theft applicable. See K.S.A. 21-3701(b)(6).

Further, not all prior convictions can count toward making petty theft a felony. See *State v. Youngblood*, 288 Kan. 659, Syl. ¶ 3, 206 P.3d 518 (2009) (uncounseled misdemeanor convictions may not be collaterally used for sentence enhancement in a subsequent criminal proceeding). So the majority's tack of simply assuming that Jenkins' third theft conviction "is" a felony relieves the State of its burden to prove that the prior convictions would qualify as enhancers. See *Youngblood*, 288 Kan. at 662 (State has burden to prove waiver of counsel, which is never presumed from a silent record). Moreover, as the above quote from *Gould* counsels, it is the jury that must find any fact that would increase Jenkins' sentence beyond the maximum authorized for a misdemeanor, and here that fact is the existence of two *constitutionally obtained* prior theft convictions.

I am also struggling to harmonize the majority's premise—that Jenkins' third theft *must* be a felony because the legislature says it is—with its acknowledgment of our holding in *State v. Sandberg*, 290 Kan. 980, 986, 235 P.3d 476 (2010). There we said that there is nothing in the law that would " ' "foreclose the prosecutor from deciding in a particular case that, notwithstanding the presence of one of the aggravated facts, the defendant will still be prosecuted for the lesser offense." ' " 290 Kan. at 986. By way of example, we clarified that "in a battery case, the prosecutor could ignore a more serious degree of bodily injury and charge battery rather than aggravated battery." 290 Kan. at 987.

*Sandberg* did not delve into the reasons that prosecutors are granted unfettered discretion in making charging decisions. But some insight can be gleaned from the separation of powers doctrine. The executive branch of government, as opposed to the judicial branch, is invested with the power to enforce the laws that the legislative branch makes; the executive branch carries out its enforcement responsibility through its prosecutors. That concept should apply with equal force to permit a municipal prosecutor to ignore the aggravating fact of two prior theft convictions and charge a violation of the petit theft ordinance. Certainly, after the case was refiled as a felony in district court, the state prosecutor would have had unfettered discretion to amend the charge back down to a misdemeanor, as happens quite frequently in plea agreements. The majority does not explain why, if the legislature has pronounced that a third theft offense "is" a felony, *i.e.*, that such a third offense "must be classified as a felony," it is nevertheless permissible for a state prosecutor, and only a state prosecutor, to defy such a legislative pronouncement.

Instead of justifying its holding in light of our stated principle of absolute prosecutorial discretion, the majority curtly dismisses the problem by summarily declaring that "a prosecutor cannot simply confer subject matter jurisdiction on a court." *Jenkins*, slip op. at 8. But, of course, that is a non sequitur, or, perhaps more accurately, a fallacy of relevance. Here, subject matter jurisdiction to prosecute Jenkins for violating the Wichita city ordinance was conferred on the Wichita municipal court by the specific statutory provision set forth in K.S.A. 12-4104, not by the prosecutor, and certainly not by any consent, waiver, or estoppel. What I discern the majority to be saying is that any allegation of any potential felony *preempts* any and all municipal jurisdiction and *forecloses* the exercise of prosecutorial discretion by any city attorney. Obviously, I do not agree.

The topic of prosecutors provides a segue into my discussion of the chaos and uncertainty the majority's holding threatens in this State's municipal courts. For municipal prosecutors, the additional burden to eliminate the existence of any felony-defining facts will be onerous, if not impossible, to discharge. Proving a negative is

never easy. In this case, for instance, it would not have been unusual for a prior municipal court conviction for shoplifting not to be recorded in and readily discoverable from a database. Does the prosecutor then need to check with every municipal court in every city where a shoplifter has ever lived, worked, or visited to eliminate any possibility that the current prosecution might be a third offense?

And the stakes for municipal prosecutors will be high. A municipal prosecutor can never be totally confident that the majority's principle of retroactive jurisdiction loss will not reach back to strike down a conviction at any time. See *State v. Sales*, 290 Kan. 130, 135, 224 P.3d 546 (2010) (subject matter jurisdiction may be raised at any time). For instance, here, if the prosecutor had never discovered that Jenkins had two prior theft convictions, Jenkins could have waited until the statute of limitations had run in order to avoid any state felony prosecution in district court and then come back to the municipal court to set aside his void conviction. See *In re Marriage of Hampshire*, 261 Kan. 854, 862, 934 P.2d 58 (1997) (judgment rendered without subject matter jurisdiction is void; void judgment is nullity that may be vacated at any time).

Indeed, I would not be surprised to see our municipal courts flooded with motions to set aside convictions, some decades old, based on the majority's paradigm for jurisdiction determination. One can envision that enterprising defendants will be confessing to all sorts of inculpatory facts in order to allege that their municipal ordinance violations are void because they were really defined felonies now beyond the reach of law enforcement and prosecution. For instance, a petty thief might well contend that the police simply did not discover all of the property he or she stole and that the total value of all stolen property exceeded $1,000, thus depriving the municipal court of jurisdiction because the crime *must* be a felony under K.S.A. 21-3701(b)(3). Or a person convicted of battery could argue that the victim has a disfiguring scar so that the crime *must* have been aggravated battery. A bad check passer might well admit to writing many more bad checks than alleged in the municipal complaint. There are infinite mischief-making possibilities for such municipal convicts seeking to clean up their crim-

inal records and perhaps recoup a fine or two. For the sake of municipal budgets everywhere, one must hope that the floodgates remain closed.

For cases that will arise after this decision, I can only imagine the problems our municipal judges will encounter in determining whether their courts have subject matter jurisdiction. Ordinarily, in a criminal case, a judge can determine jurisdiction by looking at the charging instrument. According to the majority's holding in this case, municipal court jurisdiction will need to be determined by what is *missing* from the complaint. Again, municipal judges will be called upon to establish a negative: There are no facts that could conceivably make the crime fit within the definition of a felony and thereby destroy subject matter jurisdiction in municipal court.

Finally, the majority's holding, in my view, emasculates the spirit, if not the letter, of double jeopardy. It is fairly common knowledge that a defendant acquitted of an alleged crime in a first trial is protected by double jeopardy from retrial on the same alleged acts, even if the prosecutor discovers new evidence after the first trial is completed. Many a television show has been based upon that premise. In fact, the same prohibition against a second prosecution exists if the defendant is convicted at the first trial, because "[d]ouble jeopardy protection shields an accused from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *City of Salina v. Amador*, 279 Kan. 266, Syl. ¶ 3, 106 P.3d 1139 (2005).

Here, after being convicted in municipal court and serving a jail sentence for that conviction, Jenkins was tried again in district court for the same acts. He was twice put in jeopardy of losing his freedom because the prosecutor discovered evidence after the first trial. In my view, that is precisely what our founding fathers attempted to prevent through the double jeopardy prohibitions in our constitutions. I would not allow further deterioration of our constitutional rights, especially where there is no defensible reason for it.

BEIER and ROSEN, JJ., join in the foregoing dissenting opinion.